# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

|  |  |  |
|---|---|---|
|  | ) |  |
|  | ) |  |
| IN RE RED HAT, INC. SECURITIES | ) | Master File. No. 5:04-CV-473-BR(3) |
| LITIGATION | ) |  |
| _____ | ) |  |
|  | ) |  |
| This Document Relates to: | ) |  |
|  | ) |  |
|  | ) |  |

## MEMORANDUM OF LAW IN SUPPORT OF BROCKTON CONTRIBUTORY RETIREMENT SYSTEM'S MOTION TO INTERVENE PURSUANT TO FED. R. CIV. P. 24 FOR APPOINTMENT AS LEAD PLAINTIFF <u>AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii-iv

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENT ..............................................................................................................3

    I.      THIS COURT SHOULD PERMIT BROCKTON TO INTERVENE IN
            ORDER TO PROTECT THE RIGHTS OF THE CLASS .........................3

         A.     Brockton's Motion To Intervene Is Timely .....................................4

         B.     Brockton Satisfies All Other Requirements For
              Intervention By Right ....................................................................7

              1.     Brockton Has Sufficient Interest In The
                      Currently Pending Case .......................................................7

              2.     Brockton's Interests In The Action Will Be
                      Impaired Absent Intervention .............................................7

               3.     Brockton's Interests Are Not Adequately Represented
                      By The Existing Parties To The Litigation .........................8

          C.     Brockton Satisfies All Other Requirements For
              Permissive Intervention .................................................................8

    II.     BROCKTON SHOULD BE APPOINTED LEAD PLAINTIFF
          SINCE IT IS THE APPLICANT MOST CAPABLE OF ADEQUATELY
          REPRESENTING THE INTERESTS OF THE CLASS ...........................9

         A.     This 60 Day Limit Under The PSLRA Does Not Apply
              Under These Unique Circumstances...............................................9

               1.     The PSLRA Is Silent On the Process For Selecting
                      A New Lead Plaintiff Following The Withdrawal
                      Of The Previously Ordered One .........................................9

               2.     Caselaw Within The Fourth Circuit Recognized That
                      The PSLRA's Sixty-Day Requirement May Be Extended
                      For Good Cause .................................................................10

B.      <u>Brockton Has The Largest Financial Interest Of The Movants</u>
<u>Who Satisfy The Adequacy Requirement Of Rule 23</u>...................11

III.     THE COURT SHOULD APPROVE MOVANT'S CHOICE
OF COUNSEL ............................................................................................14

IV.    DEFENDANTS' REQUEST TO REARGUE THE MOTION TO
DISMISS IS PREMATURE AND UNWARRANTED ...........................14

CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Brink v. Da Lesio*,
667 F.2d 420 (4th Cir. 1981) .................................................................. 4-5

*Chill v. Green Tree Finance Corp.*,
181 F.R.D. 398 (D. Minn. 1998).................................................................11

*Coopersmith v. Lehman Broth., Inc.*,
344 F.Supp.2d 783 (D. Mass. 2004) .................................................9, 10, 11

*Eisenberg v. Gagnon*,
766 F.2d 770 (3d Cir. 1985).........................................................................5

*Graves v. Walton County Bd. of Educ.*,
686 F.2d 1135 (5th Cir. 1982) .....................................................................4

*Hill v. Western Electric Co.*,
672 F.2d 381 (4th Cir. 1982) ....................................................................4, 5

*In re Cable & Wireless, PLC, Sec. Litigation*,
217 F.R.D. 372 (E.D. Vir. 2003) .................................................................13

*In re Global Crossing Sec. & ERISA Litigation*,
225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................13

*In re Initial Pub. Offering Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y. 2002) ...............................................................9, 11

*In re MicroStrategy, Inc., Securities Litigation*,
110 F.Supp.2d 427 (E.D. Va. 2000) ........................................................10, 11

*In re USEC Sec. Litigation*,
168 F.Supp.2d 560 (D. Md. 2001) .................................................................9

*In re Western Union Sec. Litigation*,
120 F.R.D. 629 (D.N.J. 1988).......................................................................7

*Lane v. Bethlehem Steel Corp.*,
93 F.R.D. 611 (D. Mary. 1982).....................................................................3

*Larry James Oldsmobile-Pontiac-GMC Truck Co, Inc. v. General Motors Corp.*,
175 F.R.D. 234 (N.D. Miss. 1997)..................................................................4

Case 5:04-cv-00473-BR    Document 143    Filed 08/13/2007    Page 4 of 22

*Rogers v. Paul*,
   382 U.S. 198 (1965) ........................................................................................4

*Spring Construction Co. v. Harris*,
   614 F.2d 374 (4th Cir. 1980) ...........................................................................3

*Teague v. Bakker*,
   931 F.2d 259 (4th Cir. 1991) ...........................................................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
   127 S. Ct 2499 (2007) ............................................................................5, 14, 15

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) .....................................................................4

*United Airlines, Inc. v. McDonald*,
   432 U.S. 385 (1977).........................................................................................5, 6

## RULES & STATUTES

15 U.S.C. § 78u-4 ...............................................................................9, 11, 13, 14

Fed. R. Civ. P. 24 ....................................................................................1, 3, 15

## OTHER PUBLICATIONS

Statement of Managers -- The "Private Securities Litigation Reform Act of 1995,"
   141 Cong.Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 62,
   104th Cong. 1st Sess................................................................................14

25 Fed. Proc., L. Ed. § 59:418 ...........................................................................4

## PRELIMINARY STATEMENT

This case has unfortunately had a tortured procedural history. The members of the prior "group" of lead plaintiffs, the Union Group, have either withdrawn from the action or were so uninvolved and unknowledgeable of the action, that this Court properly refused to certify them as representatives of the class. Now, the action is adrift with no lead plaintiff or lead counsel.

The Brockton Contributory Retirement System ("Brockton") submits this memorandum to intervene in this action, pursuant to Fed. R. Civ. P. 24(a)(2) and 24(b)(2), for appointment as Lead Plaintiff and for approval of its selection of Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Lead Counsel on behalf of the Class. Brockton is a public pension fund that oversees the retirement assets of the employees of the City of Brockton, Massachusetts. It is an ideal candidate to be appointed as the Lead Plaintiff here as it is precisely the sort of institutional investor Congress envisioned would head up securities class actions when it enacted the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Brockton also has no "baggage" or suffers from any potential defects as do the two competing movants.

We respectfully submit that the Class of Red Hat investors deserve to have a proper representative appointed to carry on this litigation and champion their rights. Brockton, like most other class members, relied on the efforts of the previous lead plaintiff group to prosecute this action in an effort to obtain a recovery on behalf of defrauded investors. When Brockton learned, through its counsel, that the Court denied the motion for class certification and the reasons for the denial, Brockton and its counsel, after an investigation into the case, decided to seek intervention and to represent the Class.

Brockton and its counsel have reviewed the motions of Mr. Gilbert and Mr. McRee who seek appointment as lead plaintiff and we have reviewed the Red Hat defendants' opposition.

1

We respectfully submit that the last thing this case needs is the appointment of a new lead plaintiff who is already under attack from the defendants.

Brockton is the only true public pension fund and institutional investor that has stepped forward to protect the rights and interests of the Class. The Class deserves to have a proper Lead Plaintiff to pursue its interests. Accordingly, we respectfully request that the Court grant our motion to intervene and appoint Brockton as the Lead Plaintiff and its law firm as Lead Counsel.

## STATEMENT OF FACTS

This Court, by Order dated May 11, 2007, denied the motion to certify Steve Salek and Eric Bushman as representatives of the class of Red Hat investors for the period December 17, 2002 through July 12, 2004. The Court, based on Salek's and Bushman's limited involvement in the litigation and their having filed inaccurate certifications, found them to be inadequate representatives of the class. The Court further denied the then Lead Counsel's motion to substitute or add an additional investor as a lead plaintiff.

A status conference was scheduled for June 4, 2007 to discuss scheduling and whether the action should remain consolidated. Brockton's choice of Lead Counsel, Berman DeValerio, had filed an action on behalf of an individual plaintiff when these actions were first filed in 2004 but did not previously seek appointment as Lead Counsel on behalf of any proposed Lead Plaintiff. Just a few days prior to the June 4, 2007 status conference, Berman DeValerio received a copy of the Court's class certification decision in the mail. Thereafter, counsel from Berman DeValerio contacted prior liaison counsel and defense counsel to inquire what occurred at the conference. Thereafter, Berman DeValerio monitored the docket, investigated the merits of the action, discussed the matter with Brockton and Brockton then determined to seek intervention and attempt to represent the class.

2

Although defendants, Red Hat, Matthew J. Szulik and Kevin B. Thompson ("Defendants") criticize Messrs. Gilbert and McRee for their alleged tardiness in moving to intervene, we do not believe such criticism is warranted with regard to Brockton. Brockton, through its counsel, after learning of the denial of class certification, conducted an investigation into both the procedural history of this action and the underlying merits. Not until after that investigation was complete and Brockton had time to consider the matter, did Brockton determine to seek to intervene. We respectfully submit that Brockton should not be chastised or penalized for undertaking an investigation in attempt to make an informed decision about seeking to intervene in this action and to attempt to represent the class.

## ARGUMENT

### I. THIS COURT SHOULD PERMIT BROCKTON TO INTERVENE IN ORDER TO PROTECT THE RIGHTS OF THE CLASS

Fed. R. Civ. P. 24 provides for two types of intervention: intervention of right and permissive intervention. Pursuant to Fed. R. Civ. P. 24(a)(2), an applicant is entitled to intervene if the applicant can demonstrate: (1) an interest in the subject matter of the litigation; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation. Fed. R. Civ. P. 24(a)(2); *Teague v. Bakker*, 931 F.2d 259, 260-261 (4th Cir. 1991); *see also Lane v. Bethlehem Steel Corp.*, 93 F.R.D. 611, 614 (D. Mary. 1982) (finding putative class members entitled to intervene as of right for purposes of appealing court's denial of class certification). Permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2) provides that an applicant may intervene "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). An application must be timely regardless of whether the motion is of right or permissive. *Spring Constr. Co. v. Harris*, 614 F.2d 374, 377 (4th Cir. 1980).

3

Courts have consistently permitted class members to intervene to pursue claims that initial class representatives are precluded from asserting on the class' behalf. *See, e.g.*, *Rogers v. Paul*, 382 U.S. 198, 199 (1965) (permitting intervention where class representatives' claims faced impending mootness); *Brink v. Da Lesio*, 667 F.2d 420, 423 (4th Cir. 1981) (permitting intervention of fund to satisfy standing requirement after judgment was entered); *Graves v. Walton County Bd. of Educ.*, 686 F.2d 1135, 1138 (5th Cir. 1982) (stressing desirability of adding additional plaintiffs in order to keep action alive in cases where original named plaintiff's claims became inadequate); *Larry James Oldsmobile-Pontiac-GMC Truck Co. v. General Motors Corp.*, 175 F.R.D. 234, 239-40 (N.D. Miss. 1997) (permitting intervening plaintiff to replace original named plaintiff who no longer met adequacy requirement fully)(listing cases); *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 202 (S.D.N.Y. 1992) ("Intervention of class representatives to ensure adequate class representation is highly desirable.")

### A.     Brockton's Motion To Intervene Is Timely

Although both types of intervention under Rule 24 require that the application be timely, "the type of intervention…is a relevant factor to consider in determining whether an application to intervene is timely, and courts apply a more lenient standard of timeliness when the intervention sought is of right." 25 Fed. Proc., L. Ed. § 59:418; *see also Brink,* F.2d at 428 ("Because intervention was of right, the timeliness requirement of Rule 24 should not be as strictly enforced….").

"In a class action the critical issue with respect to timeliness is whether the proposed intervenor moved to intervene 'as soon as it became clear…that the interests of the unnamed class members would no longer be protected by the named class representatives.'" *Hill v. Western Elec. Co.* 672 F.2d 381, 386 (4th Cir. 1982) (citation omitted); *see also Brink*, 667 F.2d

at 428 (finding that even though the fund "did not seek to intervene before judgment even though it recognized problems of the plaintiffs' standing, the lateness of its application is completely explainable," noting that as "plaintiffs sued in a representational capacity, and in a class action the members of the class which are represented have the right to rely on their representatives until the court rules otherwise") (internal citation omitted); *see also United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977) (upholding the right of an unnamed class member to intervene after a judgment was entered for purposes of appealing the trial court's earlier denial of class certification since "as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests"). Another important consideration the Fourth Circuit looks at in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case. *See Hill*, 672 F.2d at 386. Here, Brockton easily meets this standard.

Brockton filed this motion as soon as the need for intervention was apparent. *See Hill,* 672 F.2d at 386 (finding that applicants who waited until plaintiff's petition for a writ of certiorari was denied to seek intervention was still timely). It did not become apparent until this Court's Class Certification Order that Salek and Bushman were inadequate representatives of the Class. Brockton has sought to intervene as soon as it had sufficient time to investigate this matter through its counsel and after it became clear that an adequate class representative has yet to come forward that will be able to fairly and adequately represent the Class.

In addition to seeking intervention as soon as it became clear that its interests were no longer being protected, the other parties in the Action will not be prejudiced if Brockton is allowed to intervene. This Court made clear in its Class Certification Order that its denial of

class certification was based solely on Salek's and Bushman's failure to satisfy the adequacy of representation requirement of Rule 23. *See* Class Cert. Order at 9 (Docket No. 128). As this Court has already found the remaining Rule 23 requirements satisfied, Defendants will only need to conduct a small amount of additional discovery concerning the adequacy or typicality of Brockton. Any such discovery would be focused and limited in nature and can be dealt with expediently. If appointed, Brockton is prepared to discuss a schedule with Defendants' counsel to expedite this process and proceed in a manner least costly to Defendants.

Defendants have also been on notice since the filing of the initial complaint in this Action of the possibility of classwide liability and it should come as no surprise that, upon a finding that Salek and Bushman were inadequate class representatives that another member of the class would step forward to try and succeed where others had failed. *See United Airlines,* 432 U.S. at 395 (finding defendant could not claim prejudice when party sought to intervene after denial of class certification as it "was put on notice by the filing of the [] complaint of the possibility of classwide liability").

While Defendants will face no material prejudice, Brockton and other members of the putative class would be severely prejudiced if intervention is denied as this Action would no longer be able to proceed as a class action. While Red Hat suggests in its opposition to Gilbert's and McRee's motions that they, and other class members can pursue individual actions, this is not a realistic or practical alternative. Indeed, the Supreme Court just recently reaffirmed that "meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . ." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* 127 S. Ct 2499, 2504 (2007). *See also Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (stating that class action treatment is particularly appropriate in claims based

on violations of the securities laws); *In re Western Union Sec. Litig.*, 120 F.R.D. 629, 638 (D.N.J. 1988) (stating that "the class action is an ideal way to ensure private enforcement of the federal securities laws, since individual suits would most times be prohibitively expensive"). Denying this motion for intervention would leave most members of the Class with no viable means by which to prosecute their claims.

**B.  Brockton Satisfies All Other Requirements For Intervention By Right**

**1.  Brockton Has Sufficient Interest In The Currently Pending Case**

Brockton is a public pension fund which manages approximately $345 million in assets on behalf of the employees of the City of Brockton, Massachusetts. Stern Declaration ¶2. Brockton's claims are identical to the claims alleged in the Complaint filed on May 6, 2005. As set forth in Exhibit A to the Declaration of Hal Hannah, Brockton purchased 5,050 shares and held all of those shares during the entire Class Period and suffered losses of $ 44,592. Brockton has a sufficient interest in the outcome of the litigation against Defendants such that its interests may be harmed if this case does not proceed as a class action.

**2.  Brockton's Interests In The Action Will Be Impaired Absent Intervention**

The disposition of the pending action without Brockton's intervention will substantially impair its interest in ensuring that this Action proceed as a class. As this Court found Salek and Bushman inadequate representatives of the class, and as no other adequate representative has since stepped forward, Brockton seeks to ensure that its rights, as well as the other absentee class members' rights, are not impaired. It would be a travesty of justice to deny the class the right to pursue these securities fraud claims – after this Court denied motions to dismiss some of the claims – and allow Defendants to avoid accountability for alleged securities fraud simply because the remaining members of the Union Group were deemed inadequate. The Class should

7

not suffer or lose its rights because the prior group of lead plaintiffs were inadequate. The potential loss of class action status strongly warrants allowing Brockton to intervene to protect the interests of the class.

### 3. Brockton's Interests Are Not Adequately Represented By The Existing Parties To The Litigation

Pursuant to the reasoning found in this Court's Class Certification Order, Brockton's interests are not adequately represented by any of the existing parties. The remaining members of the Union Group, former lead plaintiffs of the Class, were found by this Court to be inadequate representatives of the class. Thus, Brockton's interests are not adequately represented in the instant Action.

### C. Brockton Satisfies All Other Requirements For Permissive Intervention

The Court should exercise its discretion and permit Brockton to intervene because Brockton also fulfills all of the requirements for permissive intervention. As Brockton's claims are identical to the claims alleged in the Complaint, as discussed above, Brockton's claims plainly share questions of law and fact indistinguishable from the current parties in the Action. Because Brockton filed this motion as soon as the need for intervention became apparent, there has been no unnecessary delay that would prejudice any of the existing parties in the Action. Only minor additional discovery may need to be taken of Brockton and this will not substantially delay or disrupt the case as a whole. Instead, Brockton and the Class stand to lose far more than Defendants should their motion to intervene be denied. While Defendants may be slightly inconvenienced with additional discovery, Brockton and the class members will lose their ability to proceed as a class, making it financially impractical and/or impossible for many members of the class to pursue claims against Defendants that they have a right to see adjudicated.

8

Accordingly, this Court should exercise its discretion to permit Brockton to intervene in the pending litigation to protect these claims.

## II. BROCKTON SHOULD BE APPOINTED LEAD PLAINTIFF SINCE IT IS THE APPLICANT MOST CAPABLE OF ADEQUATELY REPRESENTING THE INTERESTS OF THE CLASS

### A. The 60 Day Limit Under The PSLRA Does Not Apply Under These Unique Circumstances

#### 1. The PSLRA Is Silent On The Process For Selecting A New Lead Plaintiff Following The Withdrawal Of The Previously Ordered One

The procedure for selecting a lead plaintiff is set forth under the PSLRA: within twenty days after the filing of a complaint, the first plaintiff is to publish a notice and any member of the alleged class wishing to move for lead plaintiff must do so within sixty days of the notice publication. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA offers no guidance, however, where the originally appointed lead plaintiff withdraws or is deemed an inadequate class representative. In fact, courts have noted that "[t]he PSLRA is entirely silent on the proper procedure for substituting a new lead plaintiff when the previously certified one withdraws." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 120 (S.D.N.Y. 2002). Thus, the sixty-day time period under the PSLRA by which a party must move to become lead plaintiff simply does not apply to substitution of lead plaintiff proceedings. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) (setting sixty-day time limit for filing a motion to be named lead plaintiff).

The Court may fashion its own procedure for choosing a new lead plaintiff. Such a procedure should further the foremost objective of the PSLRA: "to ensure more effective representation of investors in securities fraud class actions by transferring control of the litigation from the attorneys to the investors." *In re USEC Sec. Litig.*, 168 F. Supp. 2d 560, 564 (D. Md. 2001). *See also Coopersmith v. Lehman Broth., Inc.*, 344 F. Supp. 2d 783, 792 (D. Mass. 2004)

("the 'overriding purpose' of the PSLRA … was to replace so-called figurehead or professional plaintiffs, with real investors") (citation omitted).

In order to further the purpose of the PSLRA to ensure investor-driven litigation, any procedure for choosing a new lead plaintiff must allow Brockton to move for lead plaintiff status. Unlike Gilbert and McRee, Brockton is a sophisticated institutional investor: it has the necessary resources and know-how to lead this litigation. Allowing Brockton to move for lead plaintiff will further the "overriding purpose" of the PSLRA to ensure investor-driven securities litigation. *See Coopersmith*, 344 F. Supp. 2d at 792.

In fact, as is further discussed below, given that Brockton is the **only** adequate potential lead plaintiff, a refusal to allow Brockton to move for lead plaintiff would effectively cut-off the only recourse of members of the putative class.

### 2. Caselaw Within The Fourth Circuit Recognizes That The PSLRA's Sixty-Day Requirement May Be Extended For Good Cause

Even if this Court does choose to apply the statutory sixty-day period under these unique circumstances, the sixty-day period is not absolute. The law of this circuit recognizes that, in certain situations, the PSLRA's sixty-day requirement can be extended. In *In re MicroStrategy, Inc., Securities Litigation*, after the initial lead plaintiff withdrew, the Eastern District of Virginia court invited class members to submit additional lead plaintiff motions. 110 F. Supp. 2d 427, 430 (E.D. Va. 2000). The court refused to grant lead plaintiff status to an institution, NYCERS, because it had not filed a consolidated complaint or moved for lead plaintiff within the initial sixty-day time period.[1] *Id.* at 439. The court acknowledged, however, that the sixty-day period

---

[1] *MicroStrategy* is distinguishable on its facts. First, Brockton is the only adequate plaintiff available. Conversely, in *MicroStrategy*, there was a lead plaintiff available aside from NYCERS who not only was adequate but who also had filed within the statutory sixty-day period. *MicroStrategy*, 110 F. Supp. 2d at 438-439. Second, the lead plaintiff ultimately appointed in *MicroStategy* consisted of both an institution and an individual, which the court noted "may help stabilize the litigation". *Id.* at 439. Here, Brockton is the only institution moving for lead

could be extended for "good cause." *See id.* at 439-440 ("even assuming a district court may extend the relevant statutory deadline in certain circumstances, [the institution] has shown no good cause for doing so in this case"). *See also Coopersmith,* 344 F. Supp. 2d at 791 ("courts have also recognized that, under some circumstances, the PSLRA's 60 day requirement can be extended"); and *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 402-404 & n.7 (D. Minn. 1998) (refusing to apply the sixty-day PSLRA deadline strictly where several different deadlines had been referenced in connection with various notices and where some actionable events occurred after the filing of the first notice).

Thus, even if the PSLRA's sixty-day period does apply, the period may be extended for good cause. Good cause exists here: Brockton, as discussed herein, is the only adequate lead plaintiff of those who have stepped forward.

### B. Brockton Has The Largest Financial Interest Of The Movants Who Satisfy The Adequacy Requirement Of Rule 23

During the Class Period, Brockton suffered losses in the amount of $44,592. A chart quantifying Brockton's losses is attached as Exhibit B to the Stern Decl. As Brockton is the only movant who also satisfies the adequacy requirement of Rule 23, discussed further below, Brockton accordingly has the largest financial interest and should thus be appointed Lead Plaintiff. 15 U.S.C. §78u-4(a)(3)(B); *see also In re IPO*, 214 F.R.D. at 121 (noting "the most adequate plaintiff is not necessarily the class member with the largest financial interest in the action, but rather the class member with the largest financial interest in the action who is willing to prosecute the claims [*i.e.* meet the procedural requirements of the PSLRA] and who otherwise meets the requirements of Rule 23").

---

plaintiff; Gilbert and McRee are both individuals. Third, the lead plaintiff who was appointed in *MicroStrategy* withdrew almost immediately after being appointed and not, like here, after denial of a motion for certification. Since the lead plaintiff motions had all just been filed in *MicroStrategy* there was justification to limiting the pool of applicants to those who had just filed. Thus, the reasons cited by the court in *MicroStrategy* for refusing to certify as lead plaintiff a party who did not file within the sixty-day period should not apply to Brockton.

Significant questions exist as to whether Messrs. Gilbert or McRee can satisfy the adequacy requirement under Rule 23. As the Red Hat defendants contend, Mr. Gilbert appears to be a day trader and Mr. McRee appears to have made money on a significant number of his trades in Red Hat. More significant, however, is that there are material discrepancies in the certifications filed by both Messrs. Gilbert and McRee. Indeed, this Court pointed to inaccuracies in Mr. Bushman's certification, that a purchase of 3,000 shares was omitted, as support for why Messrs. Bushman and Salek were deemed to be inadequate. Thus, Messrs. Gilbert and McRee are likely to suffer the same fate as the prior lead plaintiffs.

For example, **forty-three** separate purchases totaling **73,465** shares and **ten separate** sales totaling **24,100** shares were omitted from Mr. Gilbert's original certification even though *all* of these purchases and sales fell within the original December 8, 2003 through July 12, 2004 class period relied on by Mr. Gilbert.[2] In addition, the accuracy of Mr. Gilbert's renewed certification is questionable as five purchases totaling 33,000 shares were listed on his original certification but are now omitted from his newly filed certification. Mr. McRee's certification also contains significant inaccuracies: four purchases of 2,000 shares and four sales of 6,000 shares were included in his original certification but were not included in his recently filed certification.

As the Red Hat Defendants state in their papers "not unlike members of the Union Group, both Mr. Gilbert and Mr. McRee misstated their Red Hat trades in their original sworn lead plaintiff certifications." Opp. at 8. Whether these mistakes were intentional or not, mistakes were made and Defendants clearly intend to seize upon them. Given the history here and the problems with the Union Group, and the inaccuracies in Messrs. Salek's and Bushman's certifications, this Court should appoint as Lead Plaintiff Brockton which suffers from none of the defects as do Messrs. Gilbert or McRee. The last thing this case or this class needs is the

---

[2]    Thus, Mr. Gilbert's explanation that his losses increased from approximately $75,000 to over $350,000 due to an expanded class period is without merit.

appointment of another inadequate lead plaintiff the accuracy of whose sworn certifications are in doubt.

Moreover, unlike the other movants, Brockton is a sophisticated institutional investor that possesses the resources to be able to vigorously prosecute the action and to supervise counsel effectively. *See In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 376 (E.D. Vir. 2003) (noting "the purpose of the PSLRA's selection-of-lead-plaintiff provision was to get institutional investors involved in the prosecution of securities class action suits")*; see also In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (noting that "in cases subject to the PSLRA, the lawyers representing a class are not mere entrepreneurs acting on behalf of purely nominal plaintiffs, but are lawyers selected by court-appointed Lead Plaintiffs who are substantial and sophisticated institutional investors with access to independent legal and financial specialists and a huge stake in the litigation"); Class Certification Order at 13 (Docket No. 128) (noting "the case appears to have become exactly what Congress sought to prevent by enacting the PSLRA – lawyer-driven"). Brockton has also ensured that its trades, attached as Exhibit A to the Hannah Declaration, accurately reflects all of its transactions in Red Hat securities throughout the Class Period.

Lastly, Brockton's interests are clearly aligned with the members of the Class and there is no evidence of any antagonism between its interests and the Class. As detailed above, Brockton shares virtually identical questions of law and fact with the members of the Class, and its claims are typical of the claims of other Class members. To further its own interests, Brockton will necessarily have to advance the interests of all Class members. In addition, Brockton has retained competent and experienced counsel who, as discussed in further detail below, is highly qualified, experienced, and able to conduct this litigation in a professional manner. Thus, Brockton satisfies both the adequacy and typicality requirements of Rule 23(a) and should be appointed lead plaintiff in this action. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).

## III.   THE COURT SHOULD APPROVE MOVANT'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel, subject to court approval.  *See* Section 21D(a)(3)(B)(v), 15 U.S.C. § 78u-4(a)(3)(B)(v).  Consistent with Congressional intent, a court should not disturb the Lead Plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class."  *See* Statement of Managers -- The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H13691-08, at H13700, H. R. Conf. Rpt. No. 104-369, at 62, 104th Cong. 1st Sess. (Nov. 28, 1995).  The proposed Lead Plaintiff has selected Berman DeValerio to serve as Lead Counsel.  Berman DeValerio has been highly successful in prosecuting securities fraud class actions and other complex class actions and is well qualified to represent the Class.  *See* Stern Decl. at Exhibit C.  The Court may be assured that by granting this motion, the members of the Class will receive the highest caliber of legal representation available.

## IV.   DEFENDANTS' REQUEST TO REARGUE THE MOTION TO DISMISS IS PREMATURE AND UNWARRANTED

Defendants' contention that this Court should not appoint an appropriate Lead Plaintiff to represent the interests of the Class because the Supreme Court's recent decision in *Tellabs* requires the Court to reconsider its decision denying Defendants' motion to dismiss is disingenuous.  The sole issue before the Court is whether Gilbert, McRee or Brockton should be permitted to intervene in the action and who should be appointed as the Lead Plaintiff.  While it is understandable that Defendants would prefer to assert arguments with no advocate on the other side to counter those arguments, the question of whether the 12(b)(6) motion should be re-opened and whether it has any merit, should await the threshold question of who, if anyone, is going to represent the Class.

14

Moreover, Defendants' argument is specious.  In *Tellabs* the Supreme Court set forth the test District Court's are to apply to determine whether a complaint meets the PSLRA's "strong inference of scienter" standard.  It has nothing whatsoever to do with a motion for class certification.  Defendants are mixing apples and oranges.

Although we believe it premature to argue the merits of Defendants' request for reconsideration at this juncture, this Court's denial of Defendants' motion to dismiss easily satisfies the standards set forth in *Tellabs*.  Reconsideration is either not necessary or will yield the same result.

<u>**CONCLUSION**</u>

       For all of the foregoing reasons, Brockton respectfully requests that this Court grant its motion: (1) to intervene as of right pursuant to Rule 24(a) or, in the alternative, by permission under Rule 24(b); (2) to appoint Brockton as Lead Plaintiff of the Class; and (3) approve its selection of Berman DeValerio as Lead Counsel for all plaintiffs and Class members in connection with these proceedings.

Dated: August 13, 2007                         Respectfully submitted,

                                           **NIGLE B. BARROW, JR.**

                                         /s/ Nigle B. Barrow, Jr.
                                         127 West Hargett Street, Suite 500
                                         Raleigh, North Carolina 27602
                                         Tel. 919-834-2116
                                         Email:  Texbarrow@Att.net

                                         **BERMAN DEVALERIO PEASE**
                                         **TABACCO BURT & PUCILLO**
                                         Jeffrey C. Block
                                         Leslie R. Stern
                                         Abigail R. Romeo
                                         Autumn Smith
                                         One Liberty Square
                                         Boston, Massachusetts  02109
                                         Tel. 617-542-8300
                                         Fax  617-542-1194
                                         Email(s):
                                                jblock@bermanesq.com
                                              lstern@bermanesq.com
                                              aromeo@bermanesq.com
                                              asmith@bermanesq.com

                                         Attorneys for Proposed Lead Plaintiff
                                         Brockton Contributory Retirement System

# CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2007, the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system and served on all on all counsel of record below via transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. First Class Mail, postage prepaid.

This 13th Day of August, 2007

/s/ Nigle B. Barrow, Jr.
Nigle B. Barrow, Jr.

**Counsel for Plaintiffs**:

William Woodward Webb
Rufus Edmisten
THE EDMISTEN & WEBB LAW FIRM
133 Fayetteville Street Maill, Ste. 300
P.O. Box 1509
Raleigh, NC  27602
woodywebb@ew-law.com

L. Bruce McDaniel
MCDANIEL & ANDERSON LLP
4942 Windy Hill Drive
P.O. Box 58186
Raleigh, NC 27658

Brandon S. Neuman
SHANAHAN LAW GROUP
207 Fayetteville Street Mall
Raleigh, NC  27601
bneuman@shanahanlawgroup.com

**Counsel for Defendants:**

Christopher W. Jones
Pressly M. Millen
WOBLE CARLYLE SANDRIDGE & RICE
P.O. Box 831
Raleigh, NC  27602
cjones@wcsr.com
pmillen@wcsr.com