IN RE: RED HAT, INC. SECURITIES          )          Master File No: 5:04-CV-473-BR(3)
LITIGATION                               )
_____ )
                                         )
                                         )
This Document Relates To:                )
                                         )
ALL ACTIONS                              )
_____ )

## MEMORANDUM AND RECOMMENDATION

This action comes before the Court on Lead Plaintiff Charles Gilbert's ("Lead Plaintiff") motion for an order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, (1) preliminarily approving the proposed settlement in this action as memorialized in the Stipulation of Settlement; (2) approving the form of Class notice described in the Notice of Proposed Settlement of Class Action; (3) approving the form of the Summary Notice; and (4) scheduling a fairness hearing to determine whether the settlement should be given final approval and establishing relevant deadlines. [DE-108]. The Court held a hearing on June 3, 2010, in Raleigh, North Carolina, in order to address this motion. Representing Defendants Red Hat, Matthew J. Szulik, and Kevin B. Thompson were Pressly Millen, who appeared in person, and Bill Paine, who appeared by telephone. Representing Lead Plaintiff Charles Gilbert were L. Bruce McDaniel, who appeared in person, and Jack Reise and Stephen Astley, who appeared by telephone.

## DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure requires that a court approve the settlement reached by any certified class. Fed. R. Civ. P. 23(e). Requiring court approval helps to ensure the protection of class members whose rights may not have received sufficient consideration in the settlement negotiations. In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991).

In order to review the merits of a proposed class action settlement, courts generally employ a two-step approach. Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 855 F. Supp. 825, 827 (E.D.N.C. 1994). First, the court engages in a preliminary approval analysis "to determine whether the proposed settlement is within the range of possible approval or, in other words, whether there is probable cause to notify the class of the proposed settlement." Id. (internal quotations omitted). Second, after preliminary approval is granted and the class notified, the court holds a "fairness hearing," where all interested parties may be heard on the proposed settlement. Id. After the fairness hearing, if the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. Id.; Fed. R. Civ. P. 23(e)(2).

### I. Preliminary Approval of Class Settlement

As discussed above, because this case is in the preliminary approval stage, the Court must determine whether the settlement is within the range of possible final approval. The Fourth Circuit applies a two-part test to determine whether a proposed settlement conforms to the requirements of the Federal Rules by considering (1) fairness, which focuses on whether the proposed settlement was negotiated at arm's length; and (2) adequacy, which focuses on whether the consideration provided to the

class members is sufficient.  Jiffy Lube, 927 F.2d at 158-59; Beaulieu v. EQ Indus. Servs., Inc, No.5:06-CV-400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009).

## A. Fairness

In order to determine whether a proposed settlement is fair to the parties, courts consider: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities."  Jiffy Lube, 927 F.2d at 158-59.

The parties were actively litigating this case at the time the proposed settlement was reached.  In fact, the case has been ongoing since 2004 and the parties have filed numerous motions and pleadings over the past six years.  The matters litigated include class certification and dismissal of certain claims and defendants, among others.  See, e.g., DE-39, 68, 151 & 190.  Accordingly, the posture of the case, which has been rigorously prosecuted and defended, weighs in favor of preliminary approval.

Discovery has also been ongoing.  In July 2006, discovery related to class certification actively commenced following entry of the Court's case management order. See, e.g., DE-79 & 80.  In 2009, the parties concluded class certification discovery, and also extensively briefed the Court on class certification and related expert issues, after which the Court issued the class certification order.  [DE-190].  The parties have not yet engaged in merits-based discovery, see, e.g., DE-186 & 206, nonetheless, the proposed settlement was reached at a mature stage in the proceedings.  Although the Fourth Circuit has held that evaluating the strength of a case at the close of discovery is beneficial, Flinn v. FMC Corp., 528 F.2d 1169, 1173 (4th Cir. 1975), it has affirmed the

approval of a class settlement before any discovery had taken place. See Jiffy Lube, 927 F.2d at 159 (concluding that the district court did not err in approving the proposed settlement even though it was reached early in the litigation before any formal discovery had occurred). Here, it appears to the Court that, based on the discovery that has occurred with regard to class certification and the extensive briefing on expert issues, the parties have been able to make informed decisions regarding settlement.

The parties assert that they have acted independently and negotiated without collusion to develop this proposed settlement. Specifically, Lead Plaintiff asserts: "[t]he Settlement is a product of extensive arm's-length negotiations between counsel for the parties. The negotiations extended over a period of time, and the parties made concessions and won positions on difficult and hard-fought issues." Lead Pl.'s Mot. at 6-7 [DE-208]. Moreover, Defense counsel at the hearing asserted that the parties had engaged in settlement negotiations with an experienced mediator on three separate occasions and that the terms of the settlement were hard-fought. There is no evidence to the contrary, and the docket supports a finding of arms-length negotiations as there have been numerous filings on contested matters. Therefore, the Court is satisfied that the negotiations were conducted such that each side actively advocated its own position.

Regarding counsels' expertise, the Court has already found that Plaintiffs' lead attorneys have the experience and qualifications necessary to serve as counsel for the proposed class. [DE-151]. The Court believes that defense counsel has similar experience and qualifications as evidenced by the quality of the filings provided to the Court. Counsel for both Defendants and Lead Plaintiff asserted at the hearing their

4

opinion that that the settlement is reasonable and fair and an advantageous ending to the suit. Counsel for Lead Plaintiff also asserted the desirability of settling in the motion for Preliminary Approval. See Lead Pl.'s Mot. at 2 & 7 [DE-208]. See also Isley v. Bayh, 75 F.3d 1191, 1200 (7th Cir. 1996) (noting that a court is "entitled to give consideration to the opinion of competent counsel that the settlement is fair, reasonable, and adequate"). Accordingly, after a thorough review of the factors relating to the fairness of the proposed settlement, the Court concludes that the Stipulation of Settlement falls within the range of possible final approval.

## B. Adequacy

Next, the Court reviews the adequacy of the proposed settlement as it relates to the consideration provided to the class members. Briefly, the principal terms of the settlement are as follows: Defendants will pay $20 million into a settlement fund deposited in an interest-bearing escrow account. Lead Pl.'s Mot. Stip. of Sett. ¶ 2.1. Any person who purchased the common stock of Red Hat between December 17, 2002, and July 12, 2004, is eligible to receive payment as a class member. Id. ¶ 1.4. The proceeds of the fund will be used first to pay expenses of notice and administration of the settlement, taxes and tax expenses, attorneys' fees, costs, expenses, and interest. Id. ¶ 1.20. The Lead Plaintiff's attorneys are requesting from the court no more than 30% or at most $6 million in fees, as well as expenses up to $350,000. Lead Pl.'s Ex. 1 Notice at 3 [DE-211]. Finally, Lead Plaintiff may request up to $15,000. Id. The remainder of the fund will be dispersed to class members who submit a claim and will be distributed based on the date the stock was sold or the difference between the

purchase price and selling price, as discussed in the Notice of Proposed Settlement of Class Action. Id. at 8-12.

In determining whether the proposed settlement is adequate, relevant factors to consider include: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." Jiffy Lube, 927 F.2d at 159. Applying these factors as they relate to the adequacy of the proposed settlement based on the consideration provided to the class members, the Court finds that the settlement falls within the range of possible final approval.

The first three factors relate to the Plaintiffs' consideration of the strengths and weaknesses of their case. As stated in the Stipulation of Settlement:

The Lead Plaintiff believes that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. However, counsel for the Lead Plaintiff recognizes and acknowledges the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and possible appeals. Lead Plaintiff and his counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Litigation, as well as the difficulties and delays inherent in such litigation. Lead Plaintiff and his counsel also are mindful of the inherent problem of proof under and possible defenses to the federal securities law violations asserted in the Litigation. Lead Plaintiff and his counsel believe that the settlement set forth in the Stipulation confers substantial benefits upon the Class and that the settlement set forth in the Stipulation is in the best interest of the Class.

Lead Pl.'s Mot. Ex. A. Stip. of Sett. at 3 [DE-208]. Lead Counsel reiterated at the June 3, 2010 hearing that although their case is strong, the vagaries of litigation make

settlement the best option. Accordingly, the Court concludes that these three factors weigh in favor of finding that the settlement is within the range of final approval.

There have been no representations as to the solvency, or lack thereof, of the Defendants, and the Court gives that factor little or no weight. In addition, at this juncture in the litigation, there appear to be no objections to the proposed settlement. The Court recognizes that notice of the settlement has not yet been provided to the class as a whole and the potential for objection remains, which will be addressed at the fairness hearing. However, the key factors dealing with the adequacy of the proposed settlement's terms support preliminary approval of the proposed settlement.

### C. Modifications/Clarifications to the Stipulation of Settlement

At the hearing, the Court reviewed with counsel some potential issues and concerns with regard to the proposed Stipulation of Settlement. After discussing these issues, the Court is satisfied that the Stipulation of Settlement, as filed, is within the range of possible approval, with the exception of one modification that the Court addresses below. Accordingly, the Court will discuss some of its concerns with the Stipulation of Settlement and their resolution.

First, paragraph 5.6 provides that any balance that remains in the net settlement fund shall be donated to a non-profit organization selected by the Court. Lead Pl.'s Mot. Stip. of Sett. ¶ 5.6 [DE-208]. The Court expressed reservations about choosing the non-profit and counsel stated that they would determine an appropriate non-profit organization to which any excess monies would be donated. The Court recommends that counsel alert the Court to the non-profit that they have chosen, and that the

Stipulation of Settlement be amended to include the name of the non-profit in paragraph 5.6.

Second, paragraph 5.9 provides that any adjustments to the proposed plan of allocation are not part of the Stipulation of Settlement and are to be considered separately from the adequacy of the settlement. Id. ¶ 5.9. The Court was concerned that adjustments to the plan of allocation should not be considered separately from the settlement as a whole. Counsel explained, however, that by "considered separately" they meant that a change to the proposed plan of allocation should not affect or derail the decision by the court to approve the general terms of the settlement. In other words, any objections to the proposed plan of allocation or changes in the amount of money that a class member ultimately receives should not provide grounds for disapproving the Stipulation of Settlement. Adjustments to the proposed plan of allocation, rather, would be executed under the terms of the settlement.

The Court has reviewed the proposed plan of allocation and the Stipulation of Settlement and is satisfied that the Stipulation of Settlement should be preliminarily approved, and that any changes made to the allocation plan should not act as a rationale for disapproving the Stipulation of Settlement.

Third, similar to paragraph 5.9 above, paragraph 6.3 provides that attorneys' fees and expenses to be paid out of the Settlement Fund, "are not part of the settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement set forth in the Stipulation. . . ." Id. ¶ 6.3. Again, the Court was concerned that the attorneys' fees and expenses should not be considered separately from the Stipulation

of Settlement as a whole. In addition, at the time of the June 3, 2010 hearing, Lead Plaintiff's counsel had not provided the Court with any information about the amount of attorneys' fees and expenses that it planned to request. In a revised filing of Notice, counsel has now provided the Court with this information, as discussed more fully below. In addition, counsel explained that the purpose of this provision was to ensure that any objection to the amount of attorneys' fees and costs requested did not put in jeopardy the settlement as a whole. As such, the Court is satisfied that this provision is appropriate.

Fourth, paragraph 7.4 provides that there is a separate supplemental agreement between Lead Plaintiff and Defendants that specifies that if a certain number of class members opt out of the class, affecting a certain number of the aggregate shares of Red Hat stock, then Red Hat has the option to terminate the Stipulation of Settlement. Id. ¶ 7.4. The Stipulation further provides that the supplemental agreement will not be filed with the court. Counsel explained that the reason it did not want the supplemental agreement published was because it did not want to provide a roadmap to dissatisfied claimants to derail the settlement by convincing enough class members to opt out in order to reach the threshold number stipulated in the supplemental agreement.

While the Court understands the parties' concerns regarding disclosure, the Court should have the benefit of the supplemental agreement in evaluating the settlement. Accordingly, the court recommends that the supplemental agreement be filed under seal, which addresses the parties' concerns, but allows the Court to review the agreement. Pursuant to 15 U.S.C. § 78u-4(a)(5), the terms of a class action settlement shall not be filed under seal without good cause. "[G]ood cause shall exist

9

Case 5:04-cv-00473-BR   Document 213   Filed 06/11/10   Page 9 of 15

only if publication of a term or provision of a settlement agreement would cause direct and substantial harm to any party." 15 U.S.C. § 78u-4(a)(5). The Court concludes that good cause exists for filing the supplemental agreement under seal.

Therefore, the Court **RECOMMENDS** that preliminary approval of the proposed settlement be **GRANTED**, and that notice of the proposed settlement should be given to the class members.

The Court emphasizes, however, that it is not making a final determination that the settlement is "fair, reasonable and adequate" for purposes of Rule 23(e) or expressing any opinion regarding the merits of the case. The Court will make a definitive determination regarding whether the settlement meets the requirements for final approval at the fairness hearing.

## II. Class Notice

Lead Plaintiff also requests that the Court approve the Notice of Proposed Settlement of Class Action. Lead Pl.'s Ex. A-1 Notice [DE-211]. When a proposed settlement has been reached in a class action case, the class members must be given notice of the settlement. Fed. R. Civ. P. 23(e)(1). At the June 3, 2010 hearing, the Court expressed some concerns with the Notice, as filed. Following the hearing, Lead Plaintiff's counsel amended the Notice of Proposed Settlement of Class Action and refiled the document with the Court. [DE-211]. The Court believes that the Notice now conforms to the requirements of the Federal Rules of Civil Procedure and the applicable statutory framework.

The Private Securities Litigation Reform Act ("PSLRA") requires that any proposed or final settlement include the following information: (1) the amount of the

10

proposed settlement that will be distributed to the plaintiffs; (2) a statement of the potential outcome of the case; (3) a statement of the attorneys fees and costs for which the settling parties and their counsel intend to apply; (4) identification of lawyers' representatives who are available to answer questions; (5) reasons for settlement; and (6) any other pertinent information. 15 U.S.C. § 78u-4. Moreover, a court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).

Here, the revised Notice provides the information required by the PSLRA. It specifies that the total amount of the settlement fund is $20 million. Lead Pl.'s Ex. A-1 Notice at 2 [DE-211]. The Notice also provides a statement regarding the potential outcome of the case and notes that the estimated average distribution per share can range between $0 and $9.15 per share. Id. at 1. The Notice further identifies the contact information for a representative of Lead Plaintiff's counsel so that individuals can obtain additional information about the settlement. Id. at 1, 18. The notice also provides reasons for settling the case, such as avoiding the costs and risks associated with continued litigation. Id. at 2. Additional information is provided, such as the definition of the class of individuals eligible to receive payment under the proposed settlement (id. at 2); the procedure and rights associated with making a claim under the settlement (id. at 12-13); how a claim will be calculated (id. at 8-11); the process for opting out of the settlement (id. at 13-14); the process for objecting to the settlement (id. at 15-16); and eligibility for appearing at the fairness hearing (id. at 16-17).

Importantly, the Revised Notice now includes the means by which claims will be calculated, the upper limit of attorneys' fees and costs that Lead Plaintiff's counsel will

request from the Court, and a cover page summarizing the information provided in the revised Notice in accordance with 15 U.S.C. § 78u-4(a)(7). The Court is satisfied that the Revised Notice is adequate to satisfactorily inform potential class members of this suit.

In addition, the Court is satisfied that the proposed method of notice is sufficient. The Notice and Proof of Claim and Release documents will be mailed by first class mail to all class members who can be identified with reasonable effort. Lead Pl.'s Mot. Ex. A Order at 2 [DE-208]. The Summary Notice will be published once in the national edition of Investor's Business Daily. Id. Also, the Stipulation of Settlement, Notice and Proof of Claim Form will be posted on the website of the claims administrator. Id. Accordingly, the Court **RECOMMENDS** that the Class Notice be **APPROVED**.

III.     Summary Notice

Lead Plaintiff also requests that the Court approve the proposed Summary Notice, which will be published in the national edition of Investor's Business Daily. Lead Pl.'s Mot. Ex. A-3 Summ. Notice [DE-208]. The Summary Notice provides important information to prospective class members, such as the date of the fairness hearing, what will be decided at the hearing, the amount of the proposed settlement, how to obtain further information, and important deadlines. Id. at 1.

The Court **RECOMMENDS** that three changes be made to the Summary Notice. First, in discussing attorneys' fees and expenses, the Court concludes that the dollar amount of attorneys' fees and expenses that Lead Plaintiff's counsel is requesting should be included. Therefore, the Court recommends that the provision on attorneys' fees should read:

(4) the reasonableness of the application of Lead Counsel for the payment of attorneys' fees not to exceed 30% or $6 million of the settlement fund and expenses not to exceed $350,000 incurred in connection with this Litigation, together with interest thereon and the award of up to $15,000 to Lead Plaintiff for representing the Class.

In addition, the Court recommends that the address for the Clerk of Court should be inserted into the Summary Notice above the addresses provided for counsel. This address should read:

Clerk of the Court
Dennis P. Iavarone
United State District Court
Eastern District of North Carolina
P.O. Box 25670
Raleigh, NC 27611

Finally, the law firm for Lead Plaintiff's counsel is listed as "Robbins Geller Rudman & Dowd LLP" in the Notice of Proposed Settlement of Class Action but listed as "Coughlin Stoia Geller Rudman & Robbins LLP" in the Summary Notice. Compare Lead Pl.'s Ex. A-1Notice at 16 [DE-211] with Lead Pl.'s Mot. Ex. A-3 Summ. Notice at 2 [DE-208]. The Court recommends that Lead Plaintiff's counsel make the name of the law firm consistent between the two documents. With these modifications to the Summary Notice, the Court **RECOMMENDS** that it be approved.

## IV. Fairness Hearing and Dates

The fairness hearing in this case will be set and presided over by Senior Judge Britt. However, at the June 3, 2010 hearing, the Court discussed with counsel proposed deadlines in this case. Accordingly, the court **RECOMMENDS** that the following deadlines apply, in conformity with counsels' recommendations:

13

| Mailing of Notice | 14 days after entry of Preliminary Order |
| --- | --- |
| Summary Notice Publication | 10 days after mailing of the Notice |
| Proof of Publication and Mailing of Notice | 14 days prior to Fairness Hearing |
| Filing Requests for Exclusion | 30 days prior to Fairness Hearing |
| Filing Objections | 30 days prior to Fairness Hearing |
| Fairness Hearing | At least 120 days after entry of Preliminary Order |
| Deadlines for Proofs of Claim | 90 days from Notice date |

## CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** as follows:

(1) That the proposed Stipulation of Settlement be **APPROVED**, with the following modifications: (i) that the parties choose the non-profit organization to which any balance in the net settlement fund will be donated, and (ii) that the supplemental agreement between Lead Plaintiff and Defendants be filed under seal. [DE-208].

(2) That the revised Notice of Proposed Settlement of Class Action be **APPROVED**. [DE-211].

(3) That the Summary Notice be **APPROVED**, with the following modifications: (i) that the amount of attorneys' fees, expenses and award to the Lead Plaintiff that Lead Plaintiff's counsel could request from the Court be included; (ii) that the Clerk's address be included in the Summary Notice; and (iii) that the name of Lead Plaintiff's law firm

be changed to make it consistent with the firm name provided in the
Notice.

(4) That the schedule proposed by the parties be adopted by the Court.

The Clerk shall send copies of this Memorandum and Recommendation to
counsel for the respective parties, who have fourteen (14) days from the date of receipt
to file written objections. Failure to file timely written objections shall bar an aggrieved
party from receiving a de novo review by the District Court on an issue covered in the
Memorandum and, except upon grounds of plain error, from attacking on appeal the
proposed factual findings and legal conclusions not objected to, and accepted by, the
District Court.

This the 11th day of June, 2010.

DAVID W. DANIEL
United States Magistrate Judge