IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Master File No: 5:04-CV-473-BR

| | | |
|---|---|---|
| IN RE: RED HAT, INC. SECURITIES LITIGATION | ) ) ) | |
| | ) | **ORDER** |
| This Document Relates To: | ) ) | |
| ALL ACTIONS | ) ) | |

This matter comes before the Court on the motion of Saxena White P.A. ("Saxena White"), Milberg LLP ("Milberg"), and the Edmisten & Webb Law Firm ("Edmisten & Webb") (collectively, "Movants") [DE-226] to share in attorney's fees and expenses allowed by the Court in conjunction with the final approval of the settlement reached by the parties. Lead Plaintiff, Charles Gilbert, ("Gilbert" or "Lead Plaintiff") has filed an objection to the motion [DE-229]. Lead Plaintiff also filed a supplemental response [DE-235], to which Movants filed a response in opposition [DE-239]. Lead Plaintiff then filed a motion to strike Movants' response in opposition [DE-240], for its alleged failure to comply with the Court's local rules, to which Movants responded [DE-241]. Finally, Lead Plaintiff submitted, by Corrected Notice of Filing [DE-243], an email from lead defense counsel. In response to the Court's order, Movants and Lead Plaintiff's counsel (Robbins Geller and McDaniel & Anderson) submitted itemized time and expense records. [DE-246 & 249.] These matters have been referred by Senior Judge W. Earl Britt to the undersigned for disposition [DE-233].

Having reviewed the extensive briefing on this matter, the significant seven year history of the case, and the detailed time and expense records of counsel, the Court concludes that

Movants are entitled to $529,731.25 in attorney's fees and $36,804.44 in expenses. Accordingly, Movants' motion to share in attorney's fees and expenses is **GRANTED IN PART AND DENIED IN PART**, and Lead Plaintiff's motion to strike is **DENIED**.

## STATEMENT OF THE CASE

Beginning on July 14, 2004, fourteen nearly identical proposed class action suits were filed in this district against Red Hat, Inc. ("Red Hat") and a number of its senior officers for alleged securities law violations. On September 8, 2004, the Court consolidated the cases. [DE-13.] On September 13, 2004, four parties filed motions for appointment as lead plaintiff and for approval of their selections of lead and liaison counsel pursuant to the provisions of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. [DE-15, 17, 18 & 19.] Two of the parties, the Red Hat Plaintiff Group and Charles Gilbert, subsequently withdrew their motions. [DE-20 &21.] On November 8, 2004, the Union Group[1] and Penguin Mechanical filed a motion seeking approval of a stipulation appointing them as co-lead plaintiffs and approving their selection of three law firms – Milberg Weiss Bershad & Shulman, LLP; Chitwood & Harley, LLP; and Scott + Scott, LLC – as co-lead counsel and the Edmisten & Webb as liaison counsel. [DE-30.] On January 13, 2005, the Court appointed Union Group as lead plaintiffs [DE-39], and on February 22, 2005, the Court appointed Milberg alone as lead counsel and Edmisten & Webb as liaison counsel [DE-43].

On May 6, 2005, Plaintiffs filed a Consolidated Amended Class Action Complaint [DE-50], and on July 29, 2005, two groups of Defendants each filed motions to dismiss [DE-53 & 56]. On May 12, 2006, the Court dismissed PricewaterhouseCoopers LLP and certain Red Hat

---

[1] The Union Group consisted of six Plaintiffs: the United Food and Commercial Workers Local 1262 and Employers Pension Fund (the "Pension Fund"); Zhijie Zhang and Yile Zhang; Robert Picciurro; Eric Bushman; and Steve Salek. Milberg represented the Pension Fund, the Zhangs, and Picciurro, and Chitwood & Harley, LLP ("Chitwood") represented Bushman and Salek.

2

officers as parties and dismissed Plaintiffs' Section 304 claim, which left pending Section 10(b) claims against Red Hat and individual Defendants Szulik and Thompson and Section 20(a) claims against Szulik and Thompson. [DE-68.] On June 5, 2006, the remaining Defendants filed their answer to the amended complaint [DE-71], and on June 12, 2006, the Court issued a Request for Discovery Plan to all remaining parties [DE-72].

On June 21, 2006, lead plaintiffs filed a motion to permit Milberg to withdraw as lead counsel and to permit Saxena White to substitute as lead counsel [DE-73]. The motion was precipitated by attorney Maya Saxena's resignation from the Milberg firm and subsequent founding of Saxena White. According to the motion, Saxena had directed the litigation of this case while at Milberg and lead plaintiffs desired Saxena to continue as their counsel. On July 14, 2006, the Court granted the motion and Saxena White became lead counsel. [DE-77.]

On July 26, 2006, the parties filed their joint discovery plan [DE-79], and on July 27, 2006, the Court entered a Scheduling Order [DE-80]. On August 22, 2006, lead plaintiffs filed a motion to modify the Scheduling Order, which they contended contained errors and did not reflect the agreement of the parties reached at the Rule 26(f) planning meeting. [DE-81.] Defendants opposed amendment of the Scheduling Order, which they contended was in fact the agreed upon plan initially proposed by lead plaintiffs. [DE-83.] On September 19, 2006, the Court, based in part on the fact that the proposed scheduling order was jointly submitted and was signed and filed by Plaintiffs, denied the motion to amend [DE-86], and the parties proceeded with class, and some merits, discovery.

On November 6, 2006, proposed class representatives the Pension Fund, Robert Piccurrio, Steve Salek, and Eric Bushman (collectively the "Proposed Class Representatives")

3

filed a motion for class certification.[2] [DE-87.] The Proposed Class Representatives sought (1) certification of a class of all persons who purchased or otherwise acquired the common stock of Red Hat during the class period; (2) appointment as representatives of the class; and (3) appointment of Saxena White as class counsel. On December 7, 2006, Defendants filed a motion to compel the Pension Fund to appear for deposition [DE-95], and it subsequently withdrew as a member of the lead plaintiff group and as a proposed class representative [DE-97]. On January 3, 2007, Piccurrio also withdrew his application to serve as a class representative [DE-99], leaving Bushman and Salek as the sole remaining proposed class representatives.

On April 9, 2007, four attorneys from the Chitwood firm filed notices of appearance [DE-111-114], which Defendants moved to strike based on the Court's denial of Union Group's previous request that both Milberg and Chitwood be appointed as co-lead counsel [DE-115]. On April 19, 2007, prompted in part by the Chitwood attorneys' notices of appearance, Defendants requested a status conference with the Court to consider whether Saxena White was capable of continuing to function as lead counsel. [DE-117.] Defendants disclosed that counsel for Defendants' insurance carrier had been in discussions with the parties regarding a potential mediation and that counsel for both parties had agreed to briefly stay discovery and to participate in mediation on May 15, 2007. Defs.' Mot. Req. Status Conf. ¶ 4 [DE-117]. Defendants expressed concern as to whether Saxena White had the capacity to negotiate a settlement binding on the class after its original clients had all withdrawn as lead plaintiffs and potential class representatives, and only Chitwood's clients, Bushman and Salek,[3] remained as lead plaintiffs and proposed class representatives. *Id.* ¶ 5, 7.

---

[2] The Zhangs did not seek appointment as class representatives, Lead Pls.' Supp. Resp., Ex. B [DE-235-2], and later withdrew from the lead plaintiff group [DE-130].
[3] *See supra* note 1.

4

On April 20, 2007, Saxena White filed a motion requesting a status conference and that Brockton Contributory Retirement System ("BCRS"), an institutional investor, be substituted or added as a proposed class representative or, alternatively, that Saxena White be allowed to withdraw as lead counsel. [DE-118.] In the motion, Saxena White contended that Chitwood had actively interfered with Saxena White's ability to represent the class in an effort to take control of the case and any subsequent fee award. Mot. for Status Conf. at 2 [DE-118]. On April 24, 2007, the remaining lead plaintiffs, Bushman and Salek, filed a motion to substitute Chitwood for Saxena White as lead counsel. [DE-120.]

On May 11, 2007, the Court denied the motion for class certification based on the inadequacy of the proposed class representatives, Salek and Bushman. May 11, 2007 Order at 13 [DE-128]. The Court noted that the original lead plaintiff group had included an institutional investor with purportedly large losses (the Pension Fund), and that the only remaining members seeking to represent the class, Salek and Bushman, were "not sufficiently involved in, or informed about, the proceedings so as to protect the interests of absent class members." *Id.* The Court, citing the filings related to whether Saxena White should continue its role as lead counsel, went on to note that "the case appears to have become exactly what Congress sought to prevent by enacting the PSLRA – lawyer-driven[.]" *Id.* Because the case was no longer proceeding as a class action, the Court relieved lead counsel and liaison counsel of their responsibilities. *Id.* at 14. The Court also denied Saxena White's motion to substitute or add BCRS as a proposed class representative, the motion to strike the notices of appearance by the Chitwood attorneys, and Bushman's motion to substitute lead counsel. *Id.*

On June 4, 2007, the Court held a status conference to determine whether any of the plaintiffs from the originally filed cases would move forward individually in the absence of class

5

certification. June 4, 2007 Hr'g Tr. [DE-141]. The Court allowed the Plaintiffs thirty days to determine whether they would proceed with their actions or seek alternative relief. *Id.* at 15-16. Subsequently, Charles Gilbert and James D. McRee each filed renewed motions seeking appointment as lead plaintiff. [DE-133 & 136.] BCRS also filed a motion to intervene and to be appointed lead plaintiff [DE-142], which it later withdrew [DE-148].

On November 13, 2007, the Court appointed Charles Gilbert as new lead plaintiff, Coughlin Stoia Geller Rudman & Robbins LLP, now Robbins Geller, as lead counsel ("Robbins Geller" or "Lead Counsel"), and McDaniel & Anderson, L.L.P. as liaison counsel ("McDaniel & Anderson" or "Liaison Counsel"). The parties proceeded with class, and some merits, discovery, and on January 14, 2008, Gilbert filed a motion to certify class [DE-152]. The parties also filed motions regarding the admissibility of their respective experts on class certification. [DE-176 & 181.]

Settlement discussions occurred contemporaneously with class discovery, and the parties participated in their first mediation on April 14, 2008. On February 19, 2009, the Court entered a consent order staying merits discovery pending resolution of the pending motion to certify class. [DE-186.] On August 28, 2009, the Court granted class certification and appointed Gilbert as class representative and Robbins Geller as class counsel. [DE-190.] The parties participated in a second mediation on November 12, 2009, and a final mediation on December 3, 2009, where the parties reached a settlement agreement. Decl. of Nicholas H. Politan ¶ 7-8 [DE-224-1]. On March 29, 2010, Gilbert sought preliminary approval of a proposed settlement between the parties [DE-208], which was granted on July 8, 2010 [DE-214].

On November 29, 2010, Gilbert filed a motion for final approval of the $20 million settlement, an award to Lead Counsel of attorney's fees of 30% of the settlement fund plus

expenses, and an award to Lead Plaintiff for reimbursement of his expenses incurred representing the class. [DE-223.] That same day, Movants filed the instant motion seeking to share in attorney's fees and expenses allowed by the Court in conjunction with the final approval of the settlement reached by the parties. [DE-226.] On December 7, 2010, the Court conducted a fairness hearing and approved the $20 million settlement and awarded 30% of the settlement funds for attorney's fees with expenses not to exceed $350,000. Dec. 7, 2010 Hr'g Tr. at 20:7-8, 20:23-21:4 [DE-237]. With regard to the instant dispute over Movants' participation in the awarded attorney's fees, the Court provided counsel an opportunity to resolve the matter. *Id.* at 20:9-17. Upon notice that counsel were unable to reach a resolution [DE-232], the Court referred the instant matter to the undersigned for disposition [DE-233].

## DISCUSSION

Movants contend that they are entitled to two-thirds of the attorney's fees awarded by the Court with the remainder to Robbins Geller and McDaniel & Anderson. The Court notes that the issue raised by Movants is one of *their* right to participate in that fee award and that no objection has been raised with respect to Robbins Geller's and McDaniel & Anderson's fee application, upon which the fees and expenses awarded by the Court were based. *See* Decl. of Jack Reise in Support of Approval of the Proposed Settlement, Award of Attys' Fees & Expenses, and Plan of Allocation of Settlement Proceeds ¶ 70-80 [DE-224-2]; *see also In re Cendant Corp.* ("*Cendant II*"), 404 F.3d 173, 197 (3d Cir. 2005) (noting that "all of lead counsel's work will likely be compensable"). The Court further notes that at the final fairness hearing on the proposed settlement, Judge Britt inquired as to the lodestar of Robbins Geller, which it then estimated at $1.1 or $1.2 million. Dec. 7, 2010 Hr'g Tr. at 16:18 – 17:12 [DE-237]. Thereafter, Judge Britt awarded attorney's fees in the amount requested of 30% of the settlement. Id. at 20:23-25. It,

7

therefore, appears to the undersigned that Judge Britt considered Robbins Geller's fee application and found it to be reasonable. Accordingly, the only issue currently before the Court is whether Movants are entitled to any portion of the fees and expenses already awarded by the Court.

In support of their request to participate in the fees and expenses awarded in this case, Movants argue that they were appointed by the Court to serve as lead and liaison counsel for almost three years and that during that time they created value for the class through investigating the case, filing the initial and consolidated complaints, successfully opposing (in part) Defendants' motions to dismiss, and conducting discovery. Lead Plaintiff initially responded that Movants' request was premature because the settlement had not been approved or, alternatively, that Movants were entitled to nothing because their work conferred no substantial benefit to the class. After the Court approved the settlement, Lead Plaintiff filed a supplemental response proposing that Milberg receive $150,000, that Saxena White receive nothing, and that Edmisten & Webb be paid consistent with its alleged agreement with Milberg and Saxena White to receive a portion of any fee they recovered.

## I.    Standard of Review

Movants and Lead Plaintiff disagree as to the proper standard of review applicable to this dispute. Lead Plaintiff contends that he has the discretion to allocate fees and expenses among non-lead counsel, that his allocation is entitled to a presumption of correctness or considerable weight, and that the Court is limited to determining whether his proposed allocation is reasonable. Movants contend that the Court should decide the proper fee allocation with no deference to Lead Plaintiff's proposed allocation. Neither Lead Plaintiff nor Movants have cited Fourth Circuit case law regarding the proper standard of review applicable here, and the Court

has likewise found no controlling case law. However, the Court finds that the analysis in *Cendant II*, where the Third Circuit Court of Appeals addressed compensation of non-class counsel for work performed both before and after the appointment of a lead plaintiff, is well-reasoned and appropriately applied to the instant dispute. 404 F.3d 173.

The *Cendant II* court concluded that the court should determine the appropriate attorney's fees awarded to non-class counsel for work performed before lead plaintiff's appointment, reasoning as follows:

> [T]he court's involvement in the fee decision will be at its height when the fee request is for work performed before the appointment of the lead plaintiff. If an attorney creates a substantial benefit for the class in this period-by, for example, discovering wrongdoing through his or her own investigation, or by developing legal theories that are ultimately used by lead counsel in prosecuting the class action-then he or she will be entitled to compensation whether or not chosen as lead counsel. The court, not the lead plaintiff, must decide for itself what firms deserve compensation for work done on behalf of the class prior to the appointment of the lead plaintiff.
>
> This is not to say that the court may not give substantial deference to the lead plaintiff's decision about what work conferred such benefits. Lead plaintiff will presumably have reviewed the fee requests of all attorneys who worked on behalf of the class, and may well have a better sense of what early work was useful than will the court. The court may place significant weight on lead plaintiff's findings, but must also consider any objections proffered by those counsel left out in the cold. . . .
>
> . . . .
>
> This approach puts the primary responsibility for compensating non-designated firms on the lead plaintiffs, but preserves the independent involvement of the court in evaluating the pre-appointment contributions of non-lead counsel.

*Id.* at 195. "After a lead plaintiff is appointed, however, the primary responsibility for compensation shifts from the court to that lead plaintiff, subject of course to ultimate court approval. The PSLRA lead plaintiff is the decision maker for the class, deciding which lawyers will represent the class and how they will be paid." *Id.* at 197. With respect to work performed

9

after a lead plaintiff is appointed, the *Cendant II* court concluded that lead plaintiff's decisions on compensation should be afforded a "presumption of correctness" that can be defeated by showing (1) "some failure in lead plaintiff's fiduciary representation of the class" or (2) that "lead plaintiff's denial of fees was erroneous-that is, by clearly proving that non-lead counsel reasonably performed work that independently benefitted the class." *Id.* at 199-200.

In the present case, the Court concludes that the standard applicable to work performed prior to appointment of lead counsel is the correct one to govern this dispute, because all of the work for which Movants seek compensation was performed prior to the appointment of the current Lead Plaintiff. Lead Plaintiff lacks the type of traditional attorney-client relationship with Movants that would place him in a superior position to evaluate their work. *See id.* at 197-98 ("The PSLRA lead plaintiff chooses the class's lawyer: 'The most adequate [i.e., lead] plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.' 15 U.S.C. § 78u-4(a)(3)(B)(v). From the point of view of the PSLRA, the lead plaintiff is the client, and the attorney-client relationship is, in the first instance, the relationship between lead counsel and lead plaintiff.") Therefore, while the Court will give some consideration to Lead Plaintiff's proposed allocation and his views on the level of benefit that Movants conferred on the class, it will not afford his decision any special weight or a presumption of correctness.

Accordingly, the Court must now consider what, if any, work performed by Movants conferred a benefit on the class and determine the appropriate fee award based on that work. *Id.* at 197 ("Only work that actually confers a benefit on the class will be compensable.").

## II.    Analysis of Work Performed by Movants

### A.    Milberg

Movants contend that Milberg performed the following compensable services: "(1) extensive factual investigations, (2) drafting the complaint, (3) litigating lead plaintiff and lead counsel issues, (4) drafting the consolidated amended complaint, and (5) opposing Defendants' motion to dismiss." Movants' Mot. at 9 [DE-226]. The Court will examine each in turn.

## 1. Initial Factual Investigation and Filing of the Complaint

Movants seek compensation for the initial factual investigation and filing of the complaint. They contend that this was a novel and complex matter and that Milberg conducted "extensive investigations and performed substantial legal research in preparing and filing the [a]ction . . . ." *Id.* at 10. Milberg's time records show that it expended approximately 37 hours on investigating and filing the initial complaint. Movants' Submission of Itemized Time & Expenses ("Movants' Time Records"), Ex. 2 at 1 [DE-246-2]. Courts have recognized that the mere filing of a complaint generally does not confer benefit on the class. *See, e.g., Cendant II*, 404 F.3d at 196 ("[Securities class action] complaints are as often spurred by news reports or press releases disclosing wrongdoing-or by reports that other firms have filed complaints-as by independent investigation."). However, where lead counsel relies on novel facts or legal theories from other counsel that benefit the class, compensation may be appropriate. *Id.* at 197.

The Court does not question the novelty of issues raised with respect to these particular Defendants or the complexity of the matter, but it cannot ignore the fact that 14 nearly identical proposed class action suits were filed in this district against these Defendants. To compensate every firm that filed a complaint would encourage duplicity in work and the "race-to-the-courthouse model of securities litigation" that the PSLRA was enacted to discourage. *Id.* at 196. Movants point to nothing unique in the complaint filed by Milberg to distinguish it from the other complaints filed against Defendants. Additionally, while Milberg did attain lead counsel

status for a time, the pre-filing investigation and filing of the complaint were performed prior to Milberg's appointment as lead counsel. *Id.* at 181 ("[T]he filing of multiple complaints each alleging the same facts and legal theories will not result in fee awards for each firm that files a complaint: such copycat complaints do not benefit the class, and are merely entrepreneurial efforts taken by firms attempting to secure lead counsel status.").

Therefore, the Court concludes that Milberg's time for the initial factual investigation and filing of the complaint is not compensable.

### 2. Litigation of Lead Plaintiff and Lead Counsel Issues

Movants contend that Milberg's time litigating lead plaintiff and lead counsel issues is compensable. The Court disagrees. The lead plaintiffs whom Milberg represented as lead counsel ultimately withdrew from that role or were found by the Court to be inadequate to represent the class. In fact, the Court described the lead plaintiffs who sought appointment as class representatives as "not sufficiently involved in, or informed about, the proceedings" and then remarked that "the case appears to have become exactly what Congress sought to prevent by enacting the PSLRA – lawyer-driven[.]" May 11, 2007 Order at 13 [DE-128]. Therefore, the Court does not believe it is appropriate for Movants to be compensated for Milberg's time related to the appointment of lead plaintiffs who were ultimately determined unfit to represent the class. With respect to the litigation of lead counsel issues, the Court finds it to be, much like the filing of the initial complaint, an entrepreneurial undertaking. Additionally, Milberg's appointment as lead counsel did not, in and of itself, confer any benefit on the class.

Therefore, the Court concludes that Milberg's time litigating lead plaintiff and lead counsel issues in not compensable.

### 3. Drafting the Consolidated Amended Complaint

12

Movants contend that Milberg's time related to drafting the consolidated amended complaint is compensable. The Court agrees. The initial complaint filed by Milberg on July 14, 2004, was approximately 30 pages with 72 paragraphs. [DE-1.] After it was appointed lead counsel, Milberg undertook further extensive investigations and prepared and filed a consolidated amended complaint, which was approximately 134 pages with 334 paragraphs. [DE-50.] Movants point out that Lead Counsel cited the "filing of a detailed complaint which was partially sustained" as a factor in favor of approving the settlement. Decl. of Jack Reise ¶ 45 [DE-224-2]. Moreover, after Gilbert and Robbins Geller took over the case and the Court certified the class, Plaintiffs were given the opportunity to amend the complaint, but did not do so and relied on the consolidated amended complaint filed by Milberg. Movants' Opp'n Br. at 6 n.9. Finally, Lead Plaintiff acknowledges that some compensation should be awarded for Milberg's work preparing the consolidated amended complaint. Decl. of Charles Gilbert ¶ 11-13 [DE-235-1].

Therefore, the Court concludes that Milberg's time related to investigating and drafting the consolidated amended complaint is compensable.

### 4. Opposing the Motions to Dismiss

Movants contend that Milberg's time related to opposing Defendants' motions to dismiss is compensable. The Court agrees. Milberg successfully defended, in part, Defendants' motions to dismiss, which allowed the case to proceed. Lead Plaintiff acknowledges that Milberg's work opposing Defendants' motions to dismiss conferred some benefit on the class, but contends that time spent opposing the motions of Defendants that were dismissed (certain officers of Red Hat and PricewaterhouseCoopers LLP) provided no benefit to the class. The Court declines to make such a distinction. Judge Britt allowed Plaintiffs to file a consolidated omnibus response to the

13

two motions to dismiss, over the objection of Defendants, based on a commonality of facts and arguments between the two motions. Dec. 12, 2005 Order [DE-60]. The totality of Milberg's work responding to the motions to dismiss resulted in the survival of claims that were ultimately settled.

Therefore, the Court concludes that all of Milberg's time related to opposing Defendants' motions to dismiss is compensable.

### B. Saxena White

Movants contend that Saxena White performed the following compensable services: "(1) negotiating an acceptable discovery schedule with Defense counsel, (2) engaging in discovery of documents, researching and preparing various document requests, (3) responding to Defendants' document requests, (4) preparing for, scheduling, and facilitating multiple depositions and subpoenas for depositions, (5) attending multiple court hearings, (6) engaging in motion practice on behalf of Lead Plaintiffs as to discovery issues, class certification, and Defendants' motion to compel, (7) researching various discovery, class certification, and jurisdictional-specific issues, and (8) communicating with Lead Plaintiffs frequently as to developments in the Action." Movants' Mot. at 9 [DE-226]. The Court will examine each in turn.

### 1. Discovery

Movants' contend that Saxena White's time negotiating a discovery schedule and engaging in discovery is compensable. Lead Plaintiff contends that none of the discovery-related work benefitted the class and, therefore, should not be compensated. The Court does not question that Saxena White spent a considerable amount of time and effort in discovery, but it appears that much of that work was related to class discovery that ultimately provided no benefit to the class. However, it appears that some merits discovery, i.e. document production, took

14

place while Saxena White was lead counsel, which likely had some benefit to the class and is compensable.

### a) Discovery Schedule

Movants describe Saxena White's work related to negotiating a discovery schedule as follows:

> As Lead Counsel, Saxena White negotiated at length with defense counsel in regards to an acceptable discovery schedule, and as such a 26(f) discovery conference was held on July 12, 2006. A discovery plan was submitted to the Court on July 26, 2006 (Dkt. #79), which was approved in an Order dated July 27, 2006. Dkt. #80. After additional lengthy discussions with Defendants' counsel, Lead Plaintiffs filed a motion to modify the discovery plan with the goal of expediting the litigation and avoiding the postponement of key document discovery in the Action. Dkt. #82-1. After further briefing by the parties on these discovery issues (see Dkt. #83, #85), on September 19, 2006 the Court ultimately denied Plaintiffs' motion to modify the discovery plan. Dkt. #86.

Movants' Mot. at 5 [DE-226]. Based on the Court's review of Saxena White's time records and the case docket, it appears that most of Saxena White's time related to the discovery schedule was spent seeking a modification of the discovery plan that it filed in error.

On July 26, 2006, liaison counsel for lead plaintiffs filed the parties' joint discovery plan, and on July 27, 2006, the Court entered the Scheduling Order. On August 22, 2006, lead plaintiffs filed a motion to modify the Scheduling Order, which they contended contained errors and did not reflect the agreement the parties reached at the Rule 26(f) planning meeting. Defendants opposed amendment of the Scheduling Order, which they contended was in fact the agreed upon plan initially proposed by lead plaintiffs. On September 19, 2006, the Court, based in part on the fact that the proposed scheduling order was jointly submitted and was signed and filed by Plaintiffs, denied the motion to amend. Saxena White's time records show less than nine hours of time related to the draft scheduling order prior to the Rule 26(f) conference held on July 12, 2006 and less than 17 hours of time related to the draft scheduling order prior to the filing of

15

the proposed scheduling order. Movants' Time Records, Ex. 3 at 1 [DE-246-3]. After the scheduling order was entered, Saxena White's time records show approximately 60 hours related to seeking modification of the scheduling order, which the Court declined to grant. *Id.* at 1-2. Additionally, after the initial lead plaintiffs and Saxena White failed to obtain class certification and the Court allowed Gilbert's motion for class certification, a new discovery schedule had to be negotiated by Robbins Geller and Defendants' counsel. Aug. 28, 2009 Order [DE-190]; Parties' Proposed Scheduling Orders [DE-193]; Scheduling Order [DE-206].

Therefore, Saxena White's work related to the initial discovery plan ultimately provided no discernable benefit to the class and is, consequently, not compensable.

### b) Motion to Compel & Document Discovery

Movants also contend that Saxena White responded to a motion to compel and addendum and participated in multiple "meet and confers" related thereto. Movants' Mot. at 5 [DE-226]. Saxena White's time records also reflect a substantial amount of time related to document production and depositions. Movants' Time Records, Ex. 3 at 2-7 [DE-246-3]. Under the parties' discovery plan [DE-79], which was adopted in the Court's Scheduling Order [DE-80], discovery was bifurcated with class discovery related to Plaintiffs' motion for class certification along with merits document production to occur first and merits discovery, which was defined as "other than document discovery or third party subpoena document discovery" to follow a decision on the class certification motion. Rule 26(f) Disc. Plan ¶ 3(c)(v) [DE-79].

Following class discovery, the Court found that the proposed class representatives were inadequate and declined to certify a class. Furthermore, after Gilbert and Robbins Geller were appointed Lead Plaintiff and Lead Counsel, the parties had to again engage in class discovery. Accordingly, the Court concludes that the class discovery performed by Saxena White ultimately

16

resulted in no benefit to the class. However, with respect to the merits document discovery, the Court finds that it likely provided some benefit to the class, as evidenced by Defendants' willingness to engage in mediation discussions during this time frame.

Therefore, the Court finds that a portion of Saxena White's time related to merits discovery is compensable.

### c) Confidentiality Order

Saxena White and Defendants negotiated a confidentiality order, which governed discovery in this case to its conclusion. Therefore, the Court finds that this work benefitted the class and is compensable.

### 2. Class Certification

Movants contend that Saxena White's work related to class certification is compensable. The Court strongly disagrees. As noted before, Judge Britt flatly rejected the motion to certify a class based on the inadequacy of the proposed class representatives. He unequivocally stated: "All the relevant facts demonstrate that [the proposed representatives] are not sufficiently involved in, or informed about, the proceedings so as to protect the interests of absent class members." May 11, 2007 Order at 13 (emphasis in the original) [DE-128]. Furthermore, Judge Britt observed that "[t]he court cannot help but note that the case appears to have become exactly what Congress sought to prevent by enacting the PSLRA– lawyer-driven . . . ." *Id.* Finally, Judge Britt declined Saxena White's invitation to substitute a new proposed class representative:

> Lead Counsel's motion to substitute or add an institutional investor as a proposed class representative does not cure the inadequacy problem. That investor is not a party to this action. It has not filed a motion to intervene. Even if it were to file such motion, briefing would be required, and if the motion were allowed, discovery and additional briefing on the adequacy of the investor as a class representative would likely result. This case has been pending nearly two and one-half years. It should not be delayed any further.

17

*Id.* at 14. Saxena White's work related to the class certification motion provided no apparent benefit to the class and served only to delay the case by advocating the appointment of wholly inadequate class representatives. Furthermore, as with much of the work done by Saxena White, the class certification issue had to be relitigated by Robbins Geller.

Finally, the Court rejects Movants' contention that the case was "nearly certified," Movants' Opp'n Br. at 15 [DE-239], at the time Saxena White was relieved from its role as lead counsel. In fact, this case was far from "nearly certified" when Saxena White concluded its tenure as lead counsel. While it is true that the Court found that the numerosity, commonality/Rule 23(b)(3), and typicality requirements were satisfied, the Court detailed a litany of problems precluding a finding of adequacy on the part of the proposed representatives. Even more telling was the Court's denial of a proposed alternative representative, which was rejected in part due to the significant additional work that would be required on the adequacy issue.

Additionally, the prospect that the case would continue as a potential class action at all was far from certain. After denial of class certification, the Court held a status conference to determine whether any of the plaintiffs from the originally filed cases would move forward individually in the absence of class certification. June 4, 2007 Hr'g Tr. [DE-141]. In the Court's order appointing Gilbert as lead plaintiff, it noted that it was "most definitely concerned about the length of time this case has been pending," but found that avoidance of potential prejudice to absent class members who had relied on the potential class structure outweighed that concern. Nov. 13, 2007 Order [DE-151].

Therefore, the Court finds that Saxena White's work related to class certification is not compensable.

18

### 3. Communications with Lead Plaintiffs

Movants contend that Saxena White's time spent communicating with lead plaintiffs as to developments in the case is compensable. The Court disagrees for, generally, the same reasons that it found that the class certification work was not compensable. There is a contradiction between Movants' assertion that Saxena White was "communicating with Lead Plaintiffs *frequently*[,]" Movants' Mot. at 9 (emphasis added), and Judge Britt's conclusion that those same lead plaintiffs were "not sufficiently involved in, *or informed about*, the proceedings[.]" May 11, 2007 Order at 13 (emphasis added) [DE-128]. In fact, the Court characterized one of the proposed representative's communications with counsel as "minor." *Id.* at 11. Furthermore, it is unclear how Saxena White's communications with then lead plaintiffs ultimately benefitted the class.

Therefore, the Court finds that Saxena White's time spent communicating with then lead plaintiffs as to developments in the case is not compensable.

In summary, Saxena White's services, for the most part, bore no fruit for the class. This was a contingency fee case where, as Movants recognized in their motion, the attorneys had a substantial risk of loss. Movants' Mot. at 11 [DE-226]. While Saxena White was at the helm, the potential for this case to proceed as a class action, for all intents and purposes, was lost. After class certification was initially denied, the Court proceeded to evaluate whether any plaintiff intended to individually pursue the case, June 4, 2007 Hr'g Tr. [DE-141], but was ultimately persuaded by Robbins Geller to appoint a new lead plaintiff to pursue class certification a second time. As noted above, much of the work performed by Saxena White, e.g., discovery and class certification, had to be repeated by Robbins Geller, who ultimately achieved class certification and settled the case. It would be patently unfair for Movants to share in a fee

19

award for work related to issues that had to be relitigated by Robbins Geller. Accordingly, the Court concludes that only Saxena White's work related to merits discovery and the confidentiality order is compensable.

### C. Edmisten & Webb

Movants contend that Edmisten & Webb's service as local liaison counsel is compensable. Edmisten & Webb conducted research, reviewed draft pleadings and memoranda of law, participated in conference calls with lead counsel, attended a court hearing, and prepared a notice of compliance. Movants' Mot., Ex. 3 ¶ 5 [DE-226-3]. Lead Plaintiff's position with respect to Edmisten & Webb is that "Edmisten properly fulfilled its responsibilities as liaison counsel and should not be saddled with the issues related to Milberg's and Saxena's representation of the Class." Lead Pl.'s Supp. Resp. at 21 [DE-235]. The Court need not consider the specific work of Edmisten & Webb relative to benefit conferred on the class where the fee amount has already been set and awarded by the Court and Lead Plaintiff has not challenged Edmisten & Webb's claim for participation.

Therefore, the Court finds that Edmisten & Webb's work is compensable.

### III. Fee & Expense Award

The Court, having concluded that Movants are entitled to compensation for some of their work, must now consider the appropriate fee award for the compensable work performed. Based on a thorough review of the time records submitted by counsel,[4] the Court has calculated the following lodestars for the compensable work performed:

Milberg's work related to drafting the consolidated amended complaint ..... $359,290.00

Milberg's work related to defending the motion to dismiss ......................$ 86,372.50

---

[4] Many of the time entries include work on multiple aspects of the case. For example, one time entry noted work on mediation issues, the confidentiality order, and class representative document production. The Court has endeavored to make a reasonable allocation of time based on the information provided.

20

Saxena White's work related to discovery ...........................................$ 67,800.00

Saxena White's work related to the confidentiality order ........................$  3,768.75

Edmisten & Webb's work as liaison counsel .......................................$ 12,500.00

Total ...................................................................................$529,731.25

Movants initially submitted a lodestar of approximately $1,091,293.25 and expenses of $92,300.48, which represents the sum of the lodestars submitted by Milberg and Saxena White. Decl. of Joseph E. White ¶ 5-6 [DE-226-1]; Decl. of Michael C. Spencer ¶ 6-7 [DE-226-2]. Edmisten & Webb submitted a lodestar of $25,000, of which $12,500 had been paid by Saxena White. Decl. of William Webb ¶ 2, 4 [DE-226-3]. Movants later asserted that they were entitled to two-thirds of the $6,000,000.00 fee award, or $4,000,000.00, in essence asking the Court to apply a multiplier to their lodestar. Under the present facts and circumstances, the Court declines to do so.

As the Court has repeatedly noted, the potential for this case to proceed as a class action was highly questionable when Saxena White was relieved from its position as lead counsel. The significant settlement achieved in this case was possible only after Robbins Geller successfully persuaded the Court, over Defendant's opposition, to appoint a new lead plaintiff and to entertain another class certification motion. The Court rejects Movants' suggestion that they performed the majority of significant work in this case and that Robbins Geller simply reaped the benefits of Movants' earlier efforts. Such a suggestion is belied by the history of this case and the lodestar submitted by Robbins Geller and McDaniel & Anderson,[5] which showed that Robbins Geller had to relitigate many threshold issues, e.g., appointment of lead plaintiff, class discovery, and class certification, in addition to shepherding the case to a favorable settlement for the class

---

[5] Robbins Geller and McDaniel & Anderson submitted a lodestar of $1,551,814.50 and expenses of $276,929.85. Lead Pl.'s Notice of Filing, Ex. 1 -3 [DE-249-1 to 249-3].

members, and that Robbins Geller and McDaniel & Anderson, correspondingly, had more time in the case than did Movants. Accordingly, the Court finds no justification for applying a multiplier to Movants' lodestar. *See In re Auction Houses Antitrust Litigation*, No.00 CIV 0648, 2001 WL 210697, at *3 (S.D.N.Y. Feb. 26, 2001) (concluding that interim lead counsel was not entitled to multiplier, because the court could not find that counsel made a "substantial contribution" to the "extraordinary" settlement paid in the case).

With regard to expenses, the Court was, for the most part, unable to map these claimed expenses to a specific task. Therefore, the Court used a percentage method based on the number of compensable hours worked as applied to the total expenses claimed in order to determine what award of expenses was appropriate.

Milberg's Total Claimed Expenses................................. $68,389.47

Less Assessments.................................................($35,000.00)[6]

Expenses Eligible for Reimbursement.............................$33,389.47

Compensable Hours %....................................................67.35%[7]

Milberg's Expense Reimbursement................................$22,487.81


Saxena White's Total Claimed Expenses..........................$23,911.01

Expenses Eligible for Reimbursement.............................$11,411.01[8]

Compensable Hours %.................................................15.92%[9]

Subtotal Saxena White's Expense Reimbursement..................$1,816.63

---

[6] The Court is specifically excluding "Red Hat Litigation Fund Assessments" in the amount of $35,000.00 from the calculation based on the lack of itemization as to the use of these funds. Movants' Time Records
[7] The Compensable Hours % was calculated by dividing Milberg's compensable hours allowed by the Court (1101hrs) by the total number hours submitted by Milberg (1634.8hrs).
[8] Saxena White is entitled to reimbursement for the full $12,500.00 paid to Edmisten & Webb. Accordingly, that amount is not subject to reduction by the percentage calculation.
[9] The Compensable Hours % was calculated by dividing Saxena White's compensable hours allowed by the Court (149.33hrs) by the total number hours submitted by Saxena White (937.75hrs).

Fee Paid to Edmisten & Webb.....................................$12,500.00

Saxena White's Expense Reimbursement .......................$14,316.63

In sum, the Court has calculated that the reimbursable expenses of Milberg are $22,487.81 and of Saxena White are $14,316.63.

## IV.    Conclusion

Movants' motion to share in attorney's fees and expenses [DE-226] is **GRANTED IN PART AND DENIED IN PART**, and Lead Plaintiff's motion to strike [DE-240] is **DENIED**. Movants shall receive $529,731.25 in attorney's fees and $36,804.44 in expenses, with the remainder of the fees and expenses paid to Robbins Geller and McDaniel & Anderson.

This the 22nd day of September, 2011.

DAVID W. DANIEL
United States Magistrate Judge